UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JENNIFER McARTHUR, | CASE NO. C14-0770RSM |
| Plaintiff, | |
| v. | ORDER GRANTING IN PART DEFENDANTS' MOTION FOR PROTECTIVE ORDER |
| THE ROCK WOODFIRED PIZZA & SPIRITS, *et al.*, | |
| Defendants. | |

## I.      INTRODUCTION

This matter comes before the Court on Defendants' Motion for Protective Order.  Dkt. #54.  Defendants seek an Order allowing them to abstain from responding to certain Requests for Production, from producing a witness to testify on certain topics in a 30(b)(6) deposition request, and requiring Plaintiff to take the deposition of Defendant Jay Gigandet by telephone. *Id.*  Plaintiff opposes the motion, asserting that the discovery requests are relevant and appropriate in scope, and that Defendants have not shown good cause to require the deposition of Mr. Gigandet by telephone.  Dkt. #59.  For the reasons set forth below, this Court agrees in part with Plaintiff and GRANTS IN PART AND DENIES IN PART Defendants' motion for protective order.

ORDER
PAGE - 1

## II.     PLAINTIFF'S MOTION TO STRIKE

Plaintiff has moved to strike several portions of Defendants' Reply brief discussing the deposition of Defendant Don Bellis on the basis that the factual assertions made in the brief are unsupported. Dkt. #63. The Court agrees with Plaintiff. In their Reply, Defendants make assertions about the testimony of Mr. Bellis, however they failed to file a Declaration, deposition transcript or other document supporting such assertions. Accordingly, the Court GRANTS Plaintiff's motion to strike and will not consider those assertions in analyzing the instant motion for protective order. The remaining portions of Plaintiff's motion to strike are DENIED, as they constitute additional argument rather than a request to strike.

## III.     DISCUSSION

Rule 26(c) of the Federal Rules of Civil Procedure states that a party "from whom discovery is sought may move for a protective order" and that the "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense." In this matter, Defendants seek a protective order for a variety of reasons, as described above, and addressed in turn below.

### A.  Deposition of Jay Gigandet

Defendants first seek a protective order with respect to the deposition of Defendant Jay Gigandet. Plaintiff has sought the in-person deposition of Mr. Gigandet, and Defendants have requested that the deposition occur by telephone because Mr. Gigandet lives out-of-state and has obligations that prevent him from traveling to Washington for his deposition. Dkt. #54 at 3-4. Plaintiff asserts that she should be allowed to take Mr. Gigandet's deposition in person to assess his honesty and persuasiveness as a witness. Dkt. #59 at 5. Plaintiff further asserts that

ORDER
PAGE - 2

Mr. Gigandet has failed to demonstrate a legitimate reason why Plaintiff should be denied the right to depose him in person. *Id.* at 5-6.

The Court agrees that telephonic depositions are not recommended for obtaining controversial testimony, such as from a defendant, because the inquirer cannot observe the impact of his or her questions, evaluate the witness' nonverbal responses, or be able to ascertain whether anyone is listening in or coaching the witness. *Id.* (*citing* William W. Schwarzer, A. Wallace Tashima & James M. Wagstaffe, *Federal Civil Procedure Before Trial* § 11.443 (1997)).   The Court also notes that typically the examining party designates the location of a deposition.  However, a Protective Order may be issued to change the location of a deposition when a legitimate hardship is shown.  Moreover, as a general rule, the location of a deposition is determined by the residence or place of business of the deponent, not on the location of the court where the case is pending. *See e.g. O'Sullivan v. Rivera,* 229 F.R.D. 187 (D. New Mexico 2004) (explaining that while the examining party generally designates the location for the deposition of another party, the court may grant a protective order to require a different location, and because the plaintiff has greater influence over the choice of forum, courts are more willing to intervene in the favor of defendants).

Here, Plaintiff has noticed the deposition for Everett, WA.   Defendant Gigandet represents that he retired from his Washington-based business six months ago and moved to California.  Dkt. #55 at ¶ 8.  He assists his wife and children with taking care of their five grandchildren, who also reside in California. *Id*.  His obligations preclude him from traveling to Washington, but he is willing to take the deposition by telephone. *Id*.  The Court finds that these representations are sufficient to support a finding of hardship and entitlement to a Protective Order.  In addition, the record reflects that Plaintiff has not offered any alternative to

ORDER
PAGE - 3

appearance in person in Everett for this deposition.  As explained in *Metrex Research Corp. v. United States,* 151 F.R.D. 122 (D. Colo. 1993), "in the absence of exceptional or unusual circumstances, when a deponent resides at a substantial distance from the deposing party's residence, the deposing party should be required to take the deposition at a location in the vicinity in which the deponent resides, even if the deponent is a party." *Id.* at 125.  Thus, if Plaintiff desires to depose Mr. Gigandet in person, she may do so in California, or other nearby location amenable to Mr. Gigandet's schedule.  Otherwise, she must take the deposition by telephone.

**B. Financial Information Sought Through Requests for Production 83, 84 and 85 and 30(b)(6) Topics 2, 3, 4, 7, 8, 9, 10, 11, 14, 15, and16**

Defendants next seek a protective order for certain financial information sought by Plaintiff.  Dkt. #54 at 4-6.  Specifically, Defendants object to the following:

> **REQUEST FOR PRODUCTION NO. 83**.  Produce each of the following documents in your possession, custody, or control for the period 2006 to the present:
> a. Your stock ledgers;
> b. Your stock certificates;
> c. Your shareholder agreements;
> d. Your purchase and sale agreements;
> e. Your shareholder meeting minutes;
> f. Your director meeting minutes; and,
> g. Your consents of directors or shareholders in lieu of meeting.
>
> (Place a cover sheet on the responsive documents identifying that they are a response to this request for production.)
>
> RESPONSE:
>
>
> **REQUEST FOR PRODUCTION NO. 84**.  Produce each of the following documents for the period 2006 to the present:
>
> a. Your mission statement;
> b. Your business plan; and,
> c. Your business goals.

ORDER
PAGE - 4

(Place a cover sheet on the responsive documents identifying that they are a response to this request for production.)

RESPONSE:

**<u>REQUEST FOR PRODUCTION NO. 85</u>**.  Produce each of the following documents for the period 2006 to the present:

a. Your balance sheets;
b. Your income and revenue statements;
c. Your profit and loss statements;
d. Your cash flow statements;
e. Your quarterly and annual tax reports and filings you filed with the State of Washington or Federal Internal Revenue Service;
f. Your payroll reports;
g. Your government forms concerning payroll taxes you filed with any government entity; and,
h. Your all [sic] bank statements.

(Place a cover sheet on the responsive documents identifying that they are a response to this request for production.)

Dkt. #55-4 (bold and underline in original).

Pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, by the date of the deposition you must designate one or more of your officers, directors, or managing agents, or other persons who consent to testify on its behalf, to testify regarding the matters specified below.  You may set forth, for each person designated, the matters known on which that witness will testify.  The designated witnesses must be prepared to testify on the matters known or reasonably available to your organization on the matters set forth below:

. . .

(2) Matters relating to whether you are covered by the Fair Labor Standards Act and other statutes underlying plaintiffs claims, specifically the following.

- The number of employees employed at The Wedge Corporation and at the Bothell location of your The Rock restaurant in 2011 through 2013.

- Your annual gross volume of sales each year in 2011 through 2013.

ORDER
PAGE - 5

- The materials, equipment, appliances, cookware, dining ware, utensils, furniture, and furnishings, decor, that were delivered to you from out of state in 2011 through 2013.  The vendors from which you purchased these. The amount you paid for these each year.

- The food ingredients that were delivered to you from out of state in 2011 through 2013.  The vendors from which you purchased these. The amount you paid for these each year.

- The locations out of state at which you prepared food or products that were then delivered in state for use in 2011 through 2013.  The value of this.

- The locations out of state at which you stored food or ingredients that were then delivered in state for use in 2011 through 2013. The value of these foods and ingredients.

- Products and services you sold out of Washington State each year in 2011 through 2013. The value of these this [sic].

- The methods of transportation used to transport each of the items above in 2011 through 2013. The vendors who provided the transportation. The amount you paid for this transportation each year.

- The credit cards you accepted as a form of payment in 2011 through 2013. The total dollar amount of credit card transactions you processed each year in 2011 through 2013. The credit cards Jennifer McArthur was authorized to accept as a form of payment for goods and services at your Bothell The Rock location in 2011 through 2013. The total dollar amount of credit card transactions Jennifer McArthur processed at your Bothell The Rock location each year in 2011 through 2013.

- The number of employees who processed payments for you in which credit card transactions comprised at least one-third of all payments that person processed each year in 2011 through 2013.

- The method you used for charging credit cards each year in 2011 through 2013. The process you employed for charging credit cards. The method Jennifer McArthur was required to use to process credit cards charges while working at your Bothell The Rock Location each year in 2011 through 2013.

ORDER
PAGE - 6

- Locations of your offices, restaurants, and work locations that were not located in Washington State in 2011 through 2013. The work done at each such location. The gross sales volume of each location. The number of employees at each location.

- Locations outside Washington State in which your representative interviewed job applicants in 2011 through 2013. The number of out-of-state interviews your representatives conducted each year in 2011 through 2013.

- The medium in which you advertised your products and services (such as internet, newspapers, etc.) and the specific locations (such as specific websites, newspapers, etc.) in 2011 through 2013.

- The medium in which you advertised for employees (such as internet, newspapers, etc.) and the specific locations (such as specific websites, newspapers, etc.) in 2011 through 2013.

(3) The nature and scope of your business and holdings from 2006 to the present;

(4) Your organization and management from 2006 to the present;

. . .

(7) Your financial condition and performance, including the financial condition and performance of your Bothell The Rock restaurant from 2006 to the present;

(8) Your profits and profit margins, including the profits and profit margins of your Bothell The Rock restaurant from 2006 to the present;

(9) Your debt from 2006 to the present;

(10) Your debt to equity ratio from 2006 to the present;

(11) Your business plans from 2006 to the present;

. . .

(14) Your The Rock restaurants' operating costs (including operating costs at the Bothell location) from 2006 to the present;

(15) Actions you and your The Rock restaurants (including the Bothell location) undertook to increase revenue during the recession that began in 2008;

ORDER
PAGE - 7

(16) Actions you and your The Rock restaurants (including the Bothell location) undertook to decrease costs during the recession that began in 2008;
. . . .

Dkt. #55-3.

Defendants object to these Requests for Production ("RFPs") and 30(b)(6) topics on the basis that they are burdensome, excessive, and beyond the scope of Federal Rule of Civil Procedure 26 (b)(1). Dkt. #54 at 5. Defendants note that gathering information responsive to the RFPs and preparing witnesses for the 30(b)(6) deposition will take 60-80 hours. Dkt. #56 at ¶ 2. Thus, Defendants assert that these requests are not proportional to the needs of the case. The Court agrees.

In her Second Amended Complaint, although not drafted with specific causes of action, Plaintiff appears to make wage and hour claims under Washington State law; retaliation, disparate treatment, failure to accommodate, and hostile work environment claims under Washington State law; federal claims under Title VII and the Fair Labor Standards Act ("FLSA"); breach of contract claims; a claim for wrongful discharge in violation of public policy; a claim for *quantum meruit*; fraud and negligent misrepresentation claims; defamation and invasion of privacy claims; a claim for negligent supervision; and claims for negligent and intentional infliction of emotional distress. Dkt. #44 at ¶¶ 104-119. From what the Court can discern, it appears that most of these claims step from Plaintiff's allegations that she was not provided adequate space or breaks for breast pumping after she had a baby, and that she was forced to work off the clock in order for her manager to keep labor costs low to earn certain bonuses. *See id.* at ¶¶ 53-82.

Plaintiff argues that RFPs 83, 84 and 85, along with 30(b)(6) topics 8, 9, 10, 11, 14, 15 and 16, are designed to elicit information that goes to proof of motive. Dkt. #59 at 6. Plaintiff

ORDER
PAGE - 8

believes that the corporation lost business in the 2008 recession, and that led managers to force employees to work without breaks and off the clock. *Id.* Plaintiff asserts that she should be allowed to conduct discovery on the corporation's motive to cut labor costs that, in turn, created a motive for Plaintiff's manager to engage in the alleged unlawful conduct. *Id.*

Pursuant to Federal Rule of Civil Procedure 26(b), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and *proportional to the needs of the case* . . . " (emphasis added). In assessing proportionality, courts may consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* In this case, the Court finds that the extensive financial information sought by Plaintiff is not proportional to the needs of her case, particularly in light of her allegations about her personal work environment and managers, and that they pertain to one business location. Accordingly, Defendants are granted a protective order as to 83, 84 and 85, along with 30(b)(6) topics 8, 9, 10, 11, 14, 15 and 16.

With respect to 30(b)(6) topics 2 and 3, Plaintiff argues that those topics go toward proving that Defendants engaged in interstate commerce, which is an element required for an FLSA claim. Dkt. #59 at 7. The Court notes that in order to establish a claim under the FLSA for minimum wage or overtime compensation, a plaintiff must demonstrate that: (1) she is an "employee" of the defendant; and (2) the defendant is an "enterprise engaged in commerce" during the relevant period. *See* 29 U.S.C. §§ 206(a), 207(a). Topic 2 seeks a witness with information relevant to that element, and narrowly tailored to the years 2011-2013.

ORDER
PAGE - 9

Accordingly, the Court DENIES a protective Order on Topic 2.  The Court addresses Topic 3 below.

**C.  30(b)(6) Topics 3, 24, 30, 37, 41, 45 and 47**

In addition to the 30(b)(6) topics noted above, Defendants also object to topics 24, 30, 37, 41, 45 and 47, on the basis that they lack particularity.  Dkt. #54 at 6-8.  The Court agrees. Topics 24, 30, 37, 41, 45 and 47 read as follows:

> (24)  The facts supporting your denial of the claims asserted by plaintiff in this lawsuit;
> …
>
> (30)  Your investigations into employee complaints to you about denied rest and meal breaks;
> …
>
> (37)  Your investigations into employee complaints to you about sex or gender discrimination;
> …
>
> (41)  Your investigation into employee complaints that time they recorded was changed to reduce the time worked and reduce the corresponding compensation;
> …
>
> (45)  Your investigation into complaints about your The Rock restaurants allowing or requiring employees to work time that was not recorded by your work-time recording system and not compensated with wages as required by law;
> …
>
> (47) The facts that you rely upon to deny each of Plaintiffs' claims;
> . . . .

Dkt. #55-3.

Under Federal Rule of Civil Procedure 30(b)(6), a party may serve notice on an organization that describes "with reasonable particularity the matters on which examination is requested."  The organization must then "designate one or more officers, directors, or managing

ORDER
PAGE - 10

agents, or other persons who consent to testify on its behalf." Fed. R. Civ. P. 30(b)(6). "The persons so designated shall testify as to the matters known or reasonably available to the organization." Fed. R. Civ. P. 30(b)(6).

Although there is conflicting case law from other circuits on the proper scope of a Rule 30(b)(6) deposition in light of its "reasonable particularity" requirement, districts in the Ninth Circuit have concluded that "[o]nce the witness satisfies the minimum standard [for serving as a designated witness], the scope of the deposition is determined solely by relevance under Rule 26, that is, that the evidence sought may lead to the discovery of admissible evidence." *Detoy v. City and County of San Francisco*, 196 F.R.D. 362, 367 (N.D. Cal. 2000); *see also U.S. E.E.O.C. v. Caesars Entertainment, Inc.*, 237 F.R.D. 428, 432 (D. Nev. 2006). The scope of discovery permissible under Rule 26 should be liberally construed; the rule contemplates discovery into any matter that bears on or that reasonably could lead to other matter that could bear on any issue that is or may be raised in a case. *Phoenix Solutions Inc. v. Wells Fargo Bank, N.A.*, 254 F.R.D. 568, 575 (N.D. Cal. 2008). Discovery is not limited to the issues raised only in the pleadings, but rather it is designed to define and clarify the issues. *Miller v. Pancucci*, 141 F.R.D. 292, 296 (C.D. Cal. 1992).

As an initial matter, the Court finds that topic 3, seeking testimony about "the nature and scope of your business and holdings from 2006 to the present," is not only irrelevant given the information sought in Topic 2, it is also overbroad and not particular enough in nature that a witness could adequately prepare to answer such a topic. Accordingly, the Court will GRANT Defendants a protective order with respect to that topic.

The Court further finds that topics 30, 37, 41 and 45, while relevant, lack particularity because they fail to provide any date range. Accordingly, the Court GRANTS Defendants a

ORDER
PAGE - 11

protective order on those topics as drafted.  However, this Order does not preclude Plaintiff from drafting those topics with more particularity as to the dates of any investigations sought. This Order also does not preclude Defendants from seeking another protective order on such topics if they believe it is necessary if and once the topics are propounded again.

Finally, as to topics 24 and 47, which are essentially duplicative and seek information about Defendants' Answer to the Complaint, the Court finds those topics also lack particularity. As drafted, the topics arguably encompass attorney-client privileged information.  Accordingly, the Court GRANTS a protective order on those topics.

## IV.    CONCLUSION

Having reviewed the relevant pleadings, the declarations and exhibits attached thereto, and the remainder of the record, the Court hereby ORDERS that Defendants' Motion for Protective Order (Dkt. #54) is GRANTED IN PART AND DENIED IN PART as discussed above.

DATED this 1st day of December, 2016.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

ORDER
PAGE - 12